Filed 3/23/17; mod. and pub. order 5/25/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRIENDS OF OUTLET CREEK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MENDOCINO COUNTY AIR QUALITY MANAGEMENT DISTRICT et al.,<br><br>    Defendants and Respondents,<br><br>GRIST CREEK AGGREGATES, LLC, et al.,<br><br>    Real Parties in Interest. | A148508<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CVPT-15-66445) |

This is one of several lawsuits Friends of Outlet Creek (Friends) is pursuing in an effort to prevent asphalt production at the site of an aggregate operation. The Mendocino County Air Quality Management District (District) and Grist Creek Aggregates, LLC (Grist Creek) successfully demurred on the ground Friends can only proceed against the District in an administrative mandamus proceeding under Health and Safety Code section 40864, which the District and Grist contend cannot embrace a challenge under the California Environmental Protection Act (CEQA). Friends, in turn, has expressly disclaimed any reliance on Health and Safety Code section 40864 and asserts it can sue the District directly under CEQA. The trial court sustained the District's and Grist's demurrer, and dismissed the action.

We reverse, as there is established precedent allowing CEQA claims against air quality management districts. However, that does not mean Friends can challenge any land use designations or authorizations pertaining to the site that have been made by the

1

County of Mendocino (County).  The only action taken by the District (a separate and independent governmental agency) in connection with the land use dispute here, is an assessment of the proposed asphalt production's impact on air quality and issuance of an "Authority to Construct"—and that is the only action Friends can challenge in this lawsuit.  Further, even under CEQA, this is an administrative mandamus proceeding governed by Code of Civil Procedure section 1094.5.  Accordingly, the only relief Friends can obtain through this lawsuit against the District is invalidation of the Authority to Construct.

## BACKGROUND

Since 1972, the County has granted land use approvals for aggregate and asphalt production on the site at issue.[1]  The County approved one such use permit in 2002, and in doing so, conducted environmental review under CEQA.  The County ultimately issued a mitigated negative declaration.[2]

Seven years later, in 2009, the County updated its General Plan, changing the land use designation of the site from Rangeland to Industrial.  In doing so, the County proceeded under CEQA and prepared an environmental impact report (EIR).  The following year, in 2010, the County, consistent with its updated General Plan, rezoned 61 parcels, including the site at issue, to conform to the updated use designations.  In doing so, the County relied on its previously certified EIR.  According to County planning staff the "approved zoning change thus allows, by right, industrial uses that were previously considered to be non-conforming and subject to discretionary land use entitlements."  There was no judicial challenge to either the General Plan update or the rezoning.

---

[1]  On our own motion and after notice to the parties (Evid. Code, § 459), we have taken judicial notice of the record and appellate briefs in another appeal by Friends pending in another Division of this Court, *Friends of Outlet Creek v. County of Mendocino*, *et al.* (appeal No. A147499).

[2]  At that time, the owner of the site was " 'strongly encouraged' " by the County to seek a General Plan amendment and rezoning prior to the permit's expiration in 2012 "as a means of avoiding issues stemming from potential zoning conflicts between the Rangeland zoning and the continued non-conforming use."

2

After Grist Creek acquired the site, it applied to the County for Development Review of its proposed continuation and resumption of aggregate and asphalt production at the site. The Mendocino County Planning Department's staff report for the review stated there had been little asphalt production primarily due to market conditions and over the years much of the asphalt processing equipment had been removed. It further stated that due to environmental impacts that could result from asphalt production, Grist had opted to proceed for the time being only with an aggregate and concrete operation. The Planning Department undertook an environmental review under CEQA and, ultimately, the County adopted a negative declaration subject to two dozen conditions in mitigation. The Air Quality Management District was listed as a referral agency that had provided comments to the County.

In late 2014, the County Planning Department and Grist Creek again discussed the production of asphalt, and in March 2015, the matter was presented directly to the County Board of Supervisors by way of an "Operational Statement" that asked the board to decide whether the proposed resumption of asphalt production at the site would be a "new or changed" industrial use under the County's zoning ordinance.[3] The board, by way of a March 2015 resolution, declared the proposed use was neither a new, nor a changed, industrial use. Three days later, the County Planning Department issued a "Notice of Exemption" for the "[r]esumption of activity at the . . . aggregate processing plant," specifying the County as the "Public Agency Approving Project." Friends promptly filed a lawsuit against the County challenging this resolution.

Having obtained approval of asphalt production from the County, Grist applied to the District for an Authority to Construct.[4] As part of the review, the District's air

---

[3] The Mendocino County Board of Supervisors has reserved to itself original jurisdiction to review land use matters and can request direct review of development applications. (Mendo. County Code, ch. 2.54, § 2.54.010.) Under the Mendocino County Code, chapter 20.188, section 20.188.025, a "new or changed industrial use shall require further review." Review entails following "the 'State CEQA Guidelines.' "

[4] "California has divided responsibility for control of air pollution between the [California Air Resources] Board and 35 local and regional air quality management

pollution control officer issued a report stating, among other things, that use of the site by two previous owners for "aggregate processing, concrete, as well as a hot mix asphalt plant and concrete batch plant, . . . led to the determination by the lead Planning agency that a new [E]nvironmental Impact Review (EIR) was not required." Without further discussion, the report concluded the proposed asphalt facility was "a project or a portion of a project for which another public agency has already acted as the lead agency in compliance with CEQA." Given that determination, the air pollution control officer concluded no further environmental review by the District was required. The bulk of the report discussed emissions related to the proposed use and concluded the proposed use would "not result in a significant net increase in emissions of any air contaminant regulated under the Clean Air Act[5] Amendments of 1990 and as amended at the time of the application." In June 2015, the officer issued an Authority to Construct.

Later in the same month, the County Board of Supervisors adopted a second resolution. Expressly stating it wished to avoid protracted and expensive litigation under CEQA, the board of supervisors rescinded its March 2015 resolution. The new, June 16, 2015, resolution also expressly stated it did not impact any land use entitlements or authorizations that existed in connection with the site prior to the March 2015 resolution. Friends then filed an amended pleading in its lawsuit against the County. The County, in turn, successfully demurred on the ground the lawsuit was moot, given that the March

districts. . . . [¶] The Board is 'charged with coordinating efforts to attain and maintain ambient air quality standards, to conduct research into the causes of and solution to air pollution, and to systematically attack the serious problem caused by motor vehicles, which is the major source of air pollution in many areas of the state.' ([Health & Saf. Code,] § 39003.) The Board has exclusive responsibility for control of emissions from motor vehicles, while the local and regional districts have primary responsibility for control of air pollution from all sources other than emissions from motor vehicles. ([*Id*.] §§ 39002, 39500, 40000.) These districts 'shall adopt and enforce rules and regulations to achieve and maintain the state and federal ambient air quality standards in all areas affected by emission sources under their jurisdiction, and shall enforce all applicable provisions of state and federal law.' ([*Id*.] § 40001, subd. (a).)" (*Hardesty v. Sacramento Metropolitan Air Quality Management Dist.* (2011) 202 Cal.App.4th 404, 409.)

[5] Title 42 United States Code section 7401 et seq.

2015 resolution Friends was challenging had been rescinded. Friends appealed, and that appeal (No. A147499) now rests with another Division of this court.

In the meantime, a month after the District's air pollution control officer approved an Authority to Construct, Friends, in July 2015, filed an administrative appeal to the District's hearing board. During these proceedings, the District presented the following in support of the air pollution control officer's determination that the District did not need to conduct further environmental review: (1) the County's 2009 EIR done in connection with updating its General Plan; (2) the County's approval of the General Plan changes; (3) the County's rezoning of the site to Industrial; and (4) the 2002 mitigated negative declaration adopted by the County and the prior use permit issued by the County authorizing an asphalt plant at the site. The hearing board denied Friends' appeal in early September in a written decision, setting forth its findings and the evidence supporting them.

Friends then filed the instant lawsuit against the District, its hearing board and the air pollution control officer who issued the District's report and the Authority to Construct. The first cause of action alleged that the District failed to comply with CEQA by acting without a new environmental impact analysis. The second cause of action alleged the District did not follow its own regulations, including Mendocino County Air Quality Management District Regulation 1, Appendix A, section XIV (Regulations), requiring it to certify that it has reviewed and considered a lead agency's EIR or negative declaration when approving a project without conducting its own CEQA process.

The District and Grist demurred to both causes of action on the ground Friends cannot sue the District directly under CEQA, but, instead, can only sue it under Health and Safety Code section 40864, which they maintain cannot be used to make a CEQA challenge. The trial court agreed and sustained the demurrers. Although granted leave to amend, Friends elected to stand on its allegations, and the court subsequently dismissed the case.

DISCUSSION

Friends continues to disclaim any reliance on Health and Safety Code section 40864, contending it can sue the District directly under CEQA. When asked, at oral argument, why it has taken this procedural posture, Friends stated it believes it can obtain greater relief under CEQA than it can under Health and Safety Code section 40864.

***Suing "Under" CEQA***

There is considerable precedent that air quality management districts can be sued for failing to comply with CEQA. Most of these cases involved challenges to district-adopted rules and regulations, and, thus, were brought as ordinary mandamus actions challenging quasi-legislative action under Code of Civil Procedure section 1085 in conjunction with declaratory relief claims. (E.g., *California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 378, 380; *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 458, 460 (*American Coatings*); *Western States Petroleum Assn. v. South Coast Air Quality Management Dist.* (2006) 136 Cal.App.4th 1012, 1017–1018; *Alliance of Small Emitters/Metals Industry v. South Coast Air Quality Management Dist.* (1997) 60 Cal.App.4th 55, 60.)

Other cases, however, involved challenges to individual permit decisions, like the District's approval here of an Authority to Construct. (E.g., *Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 318; *Communities for a Better Environment v. Bay Area Air Quality Management Dist.* (2016) 1 Cal.App.5th 715, 719.) Neither of these cases mentions Health and Safety Code section 40864. In fact, the only mention of this statute we have found in the context of litigation involving an air quality management district appears in *Orange County Air Pollution Control Dist. v. Public Utilities Com.* (1971) 4 Cal.3d 945 (*Orange*), in which the Supreme Court held the Public Utilities Commission's approval of a permit for steam electric generating units did not override the air pollution control district's denial of a permit (permits being required from both agencies). (*Id.* at pp. 950–954.) At the end of its opinion, the high court observed the utility could have challenged the district's denial

6

under former Health and Safety Code sections 24322 and 24323 (recodified as Health & Saf. Code, § 40864) in an administrative mandamus action under Code of Civil Procedure section 1094.5. (*Orange*, at p. 954.)

No case, however, suggests that only Health and Safety Code section 40864 can be invoked in challenging an action by an air quality management district, whether it be quasi-legislative or quasi-adjudicative in nature. And, as we have set forth, there is established authority that an air quality management district can be sued in both contexts "under" CEQA.

Moreover, the District's hearing board's decision expressly recognizes that the District has an obligation to determine whether there has been adequate compliance with CEQA. For example, the hearing board explained: "Upon every application for an Authority to Construct or Permit to Operate, the District must either prepare a CEQA document or the [air pollution control officer] must make one of the following findings: '(1) the application is for a project or a portion of a project for which another public agency has already acted as the lead agency in compliance with CEQA; (2) the project is categorically exempt; (3) the project is ministerial; or (4) it can be seen with certainty that the project will not have a significant effect on the environment.' ([Regs., reg. 1, appen.] A, § III(a).) The [air pollution control officer]'s determination 'will be set forth in a written statement which shall be furnished to the applicant and made available to any members of the public upon request. A copy of said statement shall be affixed to any permit granted or denied.' " Specifically, "District Regulation 1, Appendix A requires the District to either prepare a CEQA document or make certain preliminary findings. . . . If the District determines that an application is for a project that has not previously undergone CEQA and is not otherwise exempt, the District must prepare its own CEQA document." The hearing board went on to state: "Here, the [air pollution control officer] prepared an Engineering Statement wherein he determined that '[t]he project as proposed is not categorically exempt from the requirements of [CEQA] . . . , but is a project or portion of a project for which another public agency has already acted as the lead agency in compliance with CEQA.' "

Accordingly, we conclude Friends can sue directly "under" CEQA and its petition is not fatally deficient for failure to invoke Health and Safety Code section 40864.

### The Scope of a "CEQA Challenge" in This Case

However, the fact Friends can bring this lawsuit "under" CEQA does not mean it can obtain relief, if any, beyond overturning the decision of the hearing board and invalidating the Authority to Construct. In suggesting it can obtain greater relief, such as obtaining a declaration or injunction against use of the site for aggregate and asphalt production, Friends ignores that the District has had only a limited role in this ongoing land use controversy—namely, assessing air quality impacts and approving issuance of an Authority to Construct for Grist's proposed asphalt production.

While Friends, in this lawsuit, can challenge the District's approval of the Authority to Construct, it cannot challenge any of the *County's* land use designations or approvals for use of the site. Rather, to challenge the County's legislative, regulatory and administrative land use actions, it must seek recourse against that governmental body. Thus, Friends cannot, in this case, challenge the adequacy of the County's prior CEQA reviews, for example, by asserting the County should have prepared a full EIR, rather than a mitigated negative declaration, in connection with any prior use designations or approvals.

Furthermore, the instant lawsuit against the District is—under controlling procedural law—an administrative mandamus proceeding. There is no ignoring that the requisites of administrative mandamus were met—a hearing was required, evidence was taken, and there was discretion in the determination of the facts vested in the administrative agency. (Code Civ. Proc., § 1094.5, subd. (a); Health & Saf. Code, § 40820 et seq.) Accordingly, even under CEQA, this lawsuit must proceed as an administrative mandamus proceeding under Code of Civil Procedure section 1094.5.

8

(Pub. Resources Code, §§ 21168, 21168.5 [expressly providing for review in accordance with Code Civ. Proc., § 1094.5].) [6]

That this is an administrative mandamus proceeding will not, as Friends seems to suggest, constrain its ability to challenge the Authority to Construct. The standard courts apply in administrative mandamus is set forth by statute: "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) And despite the "abuse of discretion" phraseology, the third inquiry under Code of Civil Procedure section 1094.5, subdivision (b), is actually broad and includes whether the agency followed the law, whether its action is supported by its findings, and whether its findings are supported by substantial evidence. (*Ibid.*; see *American Coatings*, *supra*, 54 Cal.4th at pp. 460–461 [contrasting standard applied in ordinary mandamus proceedings under Code Civ. Proc., § 1085, and observing that traditional substantial evidence standard applies to judicial review of agency findings in an administrative mandamus proceeding under Code Civ. Proc., § 1094.5]).

Thus, Friends can advance claims that, in approving the Authority to Construct, the District acted in violation of the law, either CEQA or its own rules. For example, whether the proposed asphalt operation is a "project for which another public agency has already acted as the lead agency in compliance with CEQA" as the air pollution control officer determined (and a determination the hearing board sustained) is, ultimately, a question of law to be decided on the underlying facts and any matters properly subject to judicial notice—and it appears to be the pivotal issue in this case.

---

[6] We also note that exhaustion of administrative remedies is required under CEQA. (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589–594.) Here, the statutory scheme establishing and governing air quality management districts expressly provides for administrative appeals to a district's hearing board (Health & Saf. Code, § 40800 et seq.), and Friends duly exhausted this remedy.

*Ministerial or Discretionary Action*

As an alternative ground to affirm, Grist contends the District's issuance of the Authority to Construct was, in any event, a ministerial action falling outside CEQA.

There is no dispute "CEQA applies to discretionary actions but does not apply to ministerial actions: 'Public Resources Code section 21080, subdivision (a) states that the provisions of CEQA apply only to "discretionary projects [fn. omitted] proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps . . . ." . . . Section 21080, subdivision (b)(1) specifically excludes from coverage by CEQA "ministerial projects" approved by public agencies.' " (*Health First v. March Joint Powers Authority* (2009) 174 Cal.App.4th 1135, 1142–1143.)

However, neither the air pollution control officer, nor the hearing board, appear to have treated approval of the Authority to Construct as a ministerial act wholly outside CEQA. In fact, the air pollution control officer appears to have determined that the proposed asphalt production was not even categorically exempt, but rather that it was " 'a project for which another public agency has already acted as the lead agency in compliance with CEQA,' " (a determination the hearing board upheld). (See Cal. Code Regs., tit. 14, § 15300.1 ["Since ministerial projects are already exempt, Categorical Exemptions should be applied only where a project is not ministerial under a public agency's statutes and ordinances."].)

Generally, an agency's determination of whether an activity falls under the ministerial exemption is reviewed for " 'a prejudicial abuse of discretion.' " (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 381 (*Muzzy Ranch*), quoting Pub. Resources Code, section 21168.5; *Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 693.) Indeed, California Code of Regulations, title 14, section 15268, subdivision (a), recognizes that "[t]he determination of what is 'ministerial' can most appropriately be made by the particular public agency involved based upon its analysis of its own laws,

10

and each public agency should make such determination either as a part of its implementing regulations or on a case-by-case basis." (See *Friends of Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1015; see also *Sierra Club v. Napa County Bd. of Supervisors* (2012) 205 Cal.App.4th 162, 178–180.)

Given the paucity of the record currently before us in connection with the demurrer, we cannot now evaluate the air pollution officer's apparent determination that the permit was not a ministerial act. In fact, on a fully developed record, it may be that Grist Creek is correct in asserting issuance of the Authority to Construct was, under the circumstances, a ministerial act. But that is not an issue we are able to fully consider, let alone, rule on as an alternative basis to affirm the dismissal.

*Exhaustion*

As a further alternative ground for affirmance, Grist maintains Friends did not sufficiently exhaust administrative remedies. Grist does not contend Friends failed to pursue its internal administrative remedy—indeed, Friends timely appealed to the District's hearing board. Rather, Grist asserts: "The trial court does not have jurisdiction to determine whether the 2002 mitigated negative declaration and/or 2009 EIR properly analyzed the environmental impacts of asphalt production at the Property because Appellant did not exhaust its administrative remedies challenging these CEQA determinations."

As discussed above, we agree with this assertion. But not because it is an exhaustion issue. Rather, because any challenge to the *County's* land use decisions and the environmental reviews undertaken therewith, must be advanced against the County, not the District.

**DISPOSITION**

The judgment of dismissal is reversed. Costs to appellants.

11

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Dondero, J.




A148508, *Friends of Outlook Creek v. Mendocino County Air Quality Management District*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRIENDS OF OUTLET CREEK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MENDOCINO COUNTY AIR QUALITY MANAGEMENT DISTRICT, et al.,<br><br>    Defendants and Respondents,<br><br>GRIST CREEK AGGREGATES, LLC, et al.,<br><br>Real Parties in Interest. | A148508<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CVPT-15-66445)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 23, 2017 be modified as follows:

1.  On page 3, the fourth sentence of the first full paragraph shall be modified to read as follows:

    The Planning Department undertook an initial environmental review under CEQA, and recommended issuance of a negative declaration subject to two dozen conditions in mitigation.

2.  On page 3, there shall be a new sentence after the first sentence of the second full paragraph. The new sentence should follow the sentence beginning, "In late 2014," and ending with "zoning ordinance," and footnote 3 (no change in footnote 3). The new sentence shall read as follows:

    In late 2014, the County Planning Department and Grist Creek again discussed the production of asphalt, and in March 2015, the matter was presented directly to the County Board of Supervisors by way of an "Operational Statement" that asked the board to decide whether the

1

proposed resumption of asphalt production at the site would be a "new or changed" industrial use under the County's zoning ordinance.[3] The public notice thus stated the matter to be considered was whether the "proposed resumption of the asphalt plant . . . is not a new or changed use and may resume operation subject to the conditions" of the 2002 use permit.

3. On page 3, a new paragraph shall be formed and the first sentence and the second sentence of the new paragraph shall be modified to read as follows:

> The board, by way of a March 2015 resolution, declared the proposed use was neither a new, nor a changed, industrial use, and that is was a permitted use subject to the conditions of approval of the 2002 use permit (which were attached to the resolution). Three days later, the County Planning Department issued a "Notice of Exemption" for the "[r]esumption of activity at the . . . aggregate processing plant," specifying the County as the "Public Agency Approving Project," checking a box that the "Exempt Status" was "Ministerial (§ 21080, (b)(1); 51268)." Friends promptly filed a lawsuit against the County challenging this resolution.

There is no change in the judgment.

The opinion in the above-entitled matter filed on March 23, 2017, was not certified for publication in the Official Reports. After the court's review of requests under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

_____
Humes, P. J.

2

Trial Court:   Mendocino County Superior Court

Trial Judge:   Hon. Jeanine Nadel

Counsel:

Greenfire Law, PC, Rachel S. Doughty for Plaintiff and Appellant.

Terry N. Gross, Esq.; Office of the County Counsel for Mendocino County, Katharine L. Elliottand Michael John Makdisi; Law Offices of Rapport and Marston, David Joseph Rapport for Defendants and Respondents.

Harrison, Temblador, Hungerford & Johnson LLP, Adam K. Guernsey and Mark D. Harrison for Real Parties in Interest and Respondent.