[No. H000285. Sixth Dist. May 6, 1986.]

BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.,
Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF SAN JOSE et al.,
Defendants and Respondents;
WASTE MANAGEMENT OF CALIFORNIA, INC., et al.,
Real Parties in Interest and Appellants.

854

## Counsel

Andrew L. Faber, Linda A. Callon, Russell J. Hanlon and Berliner, Cohen & Biagini for Plaintiff and Appellant.

Joan R. Gallo, City Attorney, and George Rios, Assistant City Attorney, for Defendants and Respondents.

David W. Alden, Timothy P. Walker, Orrick, Herrington & Sutcliffe, Norman E. Matteoni and Matteoni, Saxe & Nanda for Real Parties in Interest and Appellants.

## Opinion

**AGLIANO, P. J.**—Browning-Ferris Industries of California, Inc. (BFI) appeals from a judgment denying its petition for writ of mandate. BFI sought to compel respondents City Council of the City of San Jose and City of San Jose (hereafter collectively referred to as City) to set aside approval of the final environmental impact report (EIR) and the rezoning of the sanitary landfill site known as Kirby Canyon.

On appeal, BFI raises several contentions concerning the adequacy of the EIR. Real parties in interest Waste Management, Inc. and Oceanic of California, Inc. (Real Parties) have filed a cross-appeal from that portion of the trial court's decision granting BFI's motion to strike certain evidence. For the reasons outlined below, the judgment is affirmed.

The California Environmental Quality Act (Pub. Resources Code, § 21000 et seq. (CEQA)) and the regulations promulgated to implement it (Cal. Admin. Code, tit. 14, § 15000 et seq. (Guidelines)) codify the duty by state and local agencies to evaluate the environmental impact of a project and to consider less harmful alternatives. The Guidelines outline the procedure for evaluating the environmental consequences of a project. A draft EIR must be prepared for any project which has a significant effect upon the environment. (Guidelines, § 15064, subd. (a)(1).) The draft EIR must be distributed to interested parties and the public for their comments. (Guidelines, § 15087.) The agency responsible for preparing the EIR must evaluate these comments and prepare written responses. (Guidelines, § 15088.) The final EIR consists of the draft EIR, the comments received on the draft, and the agency's responses to "significant environmental points raised in the review and consultation process." (Guidelines, § 15132.) If the decision-making body approves a project which has one or more significant environmental effects, it must make findings for each significant effect. (Guidelines, § 15091.)

The 1982 general plan of the City identified the Kirby Canyon Sanitary Landfill as one of several candidate solid waste disposal sites. The project site consists of 827 acres located along Highway 101 in southeast San Jose. Waste Management conducted its own studies of Kirby Canyon and entered into a long-term lease with Oceanic to develop the site as a sanitary landfill. Waste Management proposed to operate the project on a daily basis for 55 years and estimated it would excavate 15 million cubic yards during this period. The entire landfill area would be dug to an average depth of 32 feet. Waste Management then applied for planned development zoning of Kirby Canyon. In processing the application, the City determined the project might have a significant effect on the environment and thus required the preparation of an EIR.

On July 18, 1983, the City published a draft EIR for the Kirby Canyon project. The draft EIR analyzed, inter alia, the geology of the site, including faults and mineral content of the substrata. The report stated the landfill is within a massive band of serpentine which is a geologic formation underlying much of the foothills of the Diablo Range. Serpentine contains magnesium silicate which is also known as "chrysotile."

The draft EIR also identified three faults affecting the site: the Silver Creek Fault; the Coyote Creek Fault; and an unnamed fault crossing the center of the site. The faults and other geologic conditions were initially investigated between 1963 and 1965. The investigation focused on identifying geologic constraints on developing the area for residential purposes. Further studies were completed in 1973 and 1975. These studies concluded no active fault crossed the project site.

In 1982 EMCON Associates prepared the EIR hydrogeologic study. Their investigation included surface mapping, exploratory test pits and subsurface borings, electrical logs, electric resistivity surveys, magnetometer surveys, field permeability testing, and seismic refraction surveys. They concurred with the conclusions of previous investigators that no active fault crossed the project site.

The draft EIR also observed that in August 1979 an earthquake registering 5.9 on the Richter Scale occurred near the project site and no evidence of movement on the Silver Creek, Coyote Creek, or unnamed faults was recorded. It then concluded that "[a]lthough a major seismic event is possible in the site vicinity during the lifetime of the project, due to the bedrock underlying the site ground motion from an earthquake would be significantly attenuated and would have no expected impact on the integrity of the landfill."

The draft EIR was circulated to various state and local agencies and was available for public review. Three public agencies submitted comments to the City on the adequacy of the document concerning the asbestos and seismicity issues. All comments and the City's responses were included in the draft EIR submitted to the planning commission at a public hearing held on September 14, 1983. At that time the planning commission found the EIR complete. On October 26, 1983, the planning commission held another public hearing and, in light of the EIR, recommended to the City that zoning for Kirby Canyon be changed.

On December 19, 1983, BFI, the only other owner and operator of a sanitary landfill in San Jose, submitted a letter asserting the EIR was inadequate. BFI claimed additional geologic investigation of the unnamed fault was necessary and that the report failed to analyze the health hazard of airborne asbestos resulting from the cutting of serpentine soils.

At the public hearing before the city council on December 20, 1983, Waste Management's attorney submitted a report from a geologist, Earl Torgerson, responding to BFI's claims. Further, City staff, including Gary Schoennauer, director of planning, and Ron Mearns, geologist, stated no

new issues were raised by BFI's letter of December 19. The City subsequently adopted Resolution No. 57131 stating that it had reviewed the EIR prepared by the planning commission and that based upon the findings of the EIR it intended to require certain mitigation measures. The City also adopted Ordinance No. 21522 which zoned the property for planned development as a sanitary landfill.

BFI filed a petition for writ of mandate alleging the City had abused its discretion in approving the EIR and in changing the zoning of Kirby Canyon. In opposing the petition, the City and Real Parties raised defenses of lack of standing, failure to exhaust administrative remedies, and laches. They also sought to introduce evidence which had not been presented to either the planning commission or the city council in connection with the proceedings on the EIR. The evidence included a report on asbestos-related disease, two declarations by City staff members and a transcript of a Santa Clara County Board of Supervisors' hearing. The trial court ordered the report and the declarations stricken from the record, but denied BFI's motion to exclude the transcript. The court then concluded there was substantial evidence the City had complied with the provisions of CEQA in adopting the change in zoning for the project site.

■ We first examine the jurisdictional issue of whether BFI failed to exhaust its administrative remedies before initiating the instant action. The City and Real Parties contend the planning commission certifies the EIR as complete and final and the city council does not independently determine the adequacy of the EIR. In their view, the City merely evaluates the merits of the particular project, including the environmental effects outlined in the EIR. Thus, the City and Real Parties claim BFI's objections should have been raised before both the planning commission and the city council in order to comply with the rule of exhaustion of administrative remedies. However, the applicable municipal code sections and the case law do not support their position.

■ Where a petitioner has not exhausted its administrative remedies a trial court has no jurisdiction to decide the dispute. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293-294 [109 P.2d 942, 132 A.L.R. 715].) ■ The purpose of the rule of exhaustion of administrative remedies is to provide an administrative agency with the opportunity to decide matters in its area of expertise prior to judicial review. (*San Bernardino Valley Audubon Society, Inc.* v. *County of San Bernardino* (1984) 155 Cal.App.3d 738, 748 [202 Cal.Rptr. 423].) ■ In *San Bernardino*, although the petitioners did not appear before the environmental review board to voice their objections to the EIR on a proposed project, they did appear before the planning commission and the board of supervisors. The

court concluded, "[h]ere, the Board, the agency with the ultimate responsibility to approve or disapprove the project, considered and determined the adequacy of the EIR as well as the total site application. Therefore, the purpose of the rule of exhaustion of administrative remedies was fully served by [their] appearance before the Board." (*Ibid.*)

We turn then to the San Jose Municipal Code to determine the respective roles of the planning commission and the city council in the drafting and finalization of an EIR. Section 21.20.100 provides the planning commission shall cause the preparation of a final EIR. Section 21.20.130 provides the planning commission must find the final EIR is complete and complies with the provisions of CEQA. The process of review, however, does not end at this point. Section 21.20.180, subdivision (A), states in relevant part: "*the Director of Planning shall certify* that the Final EIR has been completed in compliance with CEQA and that *the decision making body having final approval authority over the project has* considered and *approved the final EIR* prior to approval of the project." (Italics added.) Thus, it is the city council which has final approval over the EIR. Such an interpretation conforms with Guidelines, section 15090 which states in full: "The lead agency shall certify that: [¶] (a) The final EIR has been completed in compliance with CEQA; and [¶] (b) The final EIR was presented to the decisionmaking body of the lead agency and that the decisionmaking body reviewed and considered the information contained in the final EIR prior to approving the project."

The city council itself acknowledged its role in the process by stating in the ordinance adopting the change in zoning of Kirby Canyon: "WHEREAS, the Council of the City of San Jose is the decision-making body for subject prezoning and rezoning to the A(PD) District; and [¶] WHEREAS, this Council does hereby certify that as a decision-making body, it has considered and approves the information contained in such EIR, prior to action upon or approving such project; . . ."

Thus, the instant case is factually similar to *San Bernardino*. Here BFI submitted no written comments to the planning commission nor did it raise any objections to the draft EIR at the public hearings conducted by that body. However, BFI did send a letter to the city council prior to its hearing on the matter. The letter and the attached reports questioned the adequacy of the EIR in connection with its analysis of the potential hazards presented by the unnamed fault and the release of airborne asbestos. As in *San Bernardino*, BFI pursued its remedies before the agency with the ultimate responsibility for giving final approval of the EIR. Thus, the rule does not bar judicial review of the instant matter.

The City's and Real Parties' reliance upon *City of Poway* v. *City of San Diego* (1984) 155 Cal.App.3d 1037 [202 Cal.Rptr. 366] is misplaced. In that case, the petitioner presented 53 challenges to the EIR on the day of the hearing to determine approval of the project. The reviewing court did not discuss the rule of exhaustion of administrative remedies, but instead noted the challenges had been anticipated by the draft EIR and thus no response by the administrative agency to these challenges was required.

In challenging the adequacy of the EIR, BFI must establish the City abused its discretion under CEQA. An abuse of discretion occurs when a party has not proceeded in the manner required by law, when the decision is not supported by findings, or when the findings are not supported by the evidence. (Pub. Resources Code, § 21168; Code Civ. Proc., § 1094.5, subd. (b).) ■ Where no fundamental vested right is involved, a reviewing court applies the substantial evidence test in examining the decision of an administrative agency. (*City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1016-1017 [162 Cal.Rptr. 224].) ■ "The court does not pass upon the correctness of the EIR's environmental conclusions, but only upon its sufficiency as an informative document. [Citations.]" (*County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 189 [139 Cal.Rptr. 396].)

■ Further, in an administrative mandamus action, appellate review is limited to issues in the record at the administrative level. (*City of Walnut Creek* v. *County of Contra Costa, supra,* 101 Cal.App.3d 1012, 1019-1021.) Additional evidence is admissible only where it was unavailable at the time of the administrative hearing, or improperly excluded from the record. (Code Civ. Proc., § 1094.5, subd. (e).)

■ In the case before us, the City and Real Parties sought to introduce evidence not before the City Council when it made its decision in the instant matter. This evidence included a report by Malcolm Ross on asbestos-related disease, declarations by two City staff members, and the transcript of a public hearing before the Santa Clara County Board of Supervisors on January 10, 1984. Pursuant to Code of Civil Procedure section 1094.5, subdivision (e), the trial court properly granted BFI's motion to strike the report and the declarations and all references to them. However, in our view, the transcript should also have been stricken since it did not meet the requirements of section 1094.5, subdivision (e).

BFI contends the City failed to adequately respond to the comments on the EIR by public agencies and BFI.

The purpose of the EIR is to inform other public agencies and the public of the significant environmental effects of a proposed project, feasible

mitigation measures, and alternatives to the proposed project. (Pub. Resources Code, § 21061.)

Guidelines section 15151 outlines the standard for an adequate EIR. It provides that "[a]n EIR should be prepared with a sufficient degree of analysis to provide decisionmakers with information which enables them to make a decision which intelligently takes account of environmental consequences. An evaluation of the environmental effects of a proposed project need not be exhaustive, but the sufficiency of an EIR is to be reviewed in the light of what is reasonably feasible. Disagreement among experts does not make an EIR inadequate, but the EIR should summarize the main points of disagreement among the experts. *The courts have looked not for perfection but for adequacy, completeness, and a good faith effort at full disclosure.*" (Italics added.) ▮ Thus, a lead agency need not respond to each comment made during the review process, however, it must specifically respond to the most significant environmental questions presented. (*Gallegos* v. *State Bd. of Forestry* (1978) 76 Cal.App.3d 945, 954 [142 Cal.Rptr. 86].) Further, the determination of the sufficiency of the agency's responses to comments on the draft EIR turns upon the detail required in the responses. (*Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 686 [188 Cal.Rptr. 233].) Where a general comment is made, a general response is sufficient. (*Cleary* v. *County of Stanislaus* (1981) 118 Cal.App.3d 348, 359-360 [173 Cal.Rptr. 390].)

▮ Initially, we note there is no requirement that an agency respond in writing to comments submitted after expiration of the comment period. Guidelines section 15088, subdivision (a), states in part "[t]he lead agency shall respond to comments received during the noticed comment period . . . ." (See also San Jose Mun. Code, § 21.29.070.) In this case, the City was not required to respond to BFI's comments which were made long after the noticed comment period. However, to the extent these comments point out any alleged inadequacies of the EIR they are summarized below.

The City responded to comments by eight public agencies and one environmental group. BFI focuses on the adequacy of the City's responses to the comments of three public agencies. ▮ The Santa Clara Valley Water District noted that chrysotile is an asbestos mineral and that asbestos is a suspected carcinogen when inhaled. The agency asked for no revision to the draft, but stated "[c]ontrol of dust will become an important part of the operation in addition to 'disclosures' to workers and neighbors." The City agreed with this comment and responded by acknowledging the presence of asbestos and stating that "[t]echniques for controlling dust (sprinkling) and preventing it from being washed into streams (sedimentation ponds/basins) will be utilized by the project."

BFI also submitted a letter and three reports discussing this issue. Geo-technical Consultants, Inc. (GCI) prepared a report stating additional studies might be necessary to fully evaluate the possible danger of airborne asbestos. The report also noted conventional sprinkling would have little mitigating effect because only the ground surface would be wetted. Dr. W. Clark Cooper, a specialist in the field of occupational health, submitted a report stating the presence of chrysotile in Kirby Canyon was a potential health hazard. He indicated further investigation was warranted. In a third report, Dr. Barry Horn, a lung specialist with experience in the treatment of asbestos-related diseases, stated inhalation of asbestos dust can cause pulmonary fibrosis and cancer of the lung. In response to these claims, Waste Management introduced a report by a geologist, Earl Torgerson. The report observed that serpentine soils containing chrysotile are extensive throughout the hills of the Santa Clara Valley. It also pointed out that the same soil and geologic conditions exist in San Mateo County where an air pollution monitoring program was conducted in 1980 on an excavation project. Tests revealed no evidence of airborne asbestos fibers from the cutting of serpentine containing chrysotile. The report concluded water-spraying of the work area as described in the EIR would be sufficient to control emissions from the excavation of serpentine.

 An administrative agency may choose between differing expert opinions. (See *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 822 [130 Cal.Rptr. 249]; *County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d 185, 197.) In the instant case, the City need not have accepted the opinions submitted by BFI. The EIR does state the potential danger of chrysotile and how the City intends to mitigate such danger. Moreover, given the general nature of the Water District's comment and the City's agreement with the comment, the City's response was sufficient.

 We next examine the adequacy of the City's response on the seismicity issue. The Regional Water Quality Control Board commented that "[t]he final EIR should discuss the maximum probable earthquake on the closest active fault rather than on the San Andreas Fault. The discussion should include the maximum ground acceleration to which the site would be subjected, and the effect of the acceleration on the drainage and leachate control facilities." In response, the City amended the text of the EIR to reflect the maximum effect of an earthquake on the three most potentially damaging faults. The amended text reads as follows: "The fault systems that are most likely to influence the site and their related peak (rock) accelarations [*sic*] are: (1) San Andreas Fault, 0.22 g; (2) Hayward-Calaveras Fault, 0.35 g; and (3) Coyote Creek Fault, 0.32 g. [¶] Refuse fill slopes have historically exhibited a high degree of stability under high static and

earthquake loading. Typical examples of this stability are found in the canyon landfills operated by the Los Angeles County Sanitation District, where 2:1 slopes have been constructed to heights of 400'. These landfills have been subjected to numerous small earthquakes, and most recently to the 1971 San Fernando earthquake, which registered 6.6 on the Richter Scale, with measured accelerations approaching 1.0 g. In spite of the seismic shocks experienced by these landfills, their fill slopes have remained stable and have suffered no damage. [¶] The stability of refuse fill slopes has been exhibited even by landfills close to the epicenter of a moderate-to-strong earthquake. A specific example is that of the Sunshine Canyon Landfill in the San Gabriel Mountains of Southern California, located within 8 miles of the epicenter of the San Fernando earthquake. The landfill has been constructed with 2:1 slopes to heights exceeding 200'. While bridges, dams, roads, and earthfill slopes failed within 8 miles of the epicenter of this quake, no damage occurred to the slopes at Sunshine Canyon. Based on the performance of the above sites, seismic shaking should have little impact on the Kirby Canyon landfill. Any effect of earthquake shaking would be expressed by displacement and possible exposure of refuse on fill slopes and limited disruption of drainage ditches. Regarding the area involved would restore the site to original conditions [*sic*]; moreover, no threat of ground-water pollution would result from seismic activity.''

The Santa Clara Valley Health Department also commented on this issue. It stated: ''No negative discussion of these faults is found in the report. . . . In view of the recent Coalinga earthquake which was reported caused by a potentially inactive fault; further seismic evaluation of the Kirby Canyon site seems indicated.'' The City disagreed with this view and observed ''seismic analysis includes a number of variables, including the size (length and depth) of a fault, its amount of displacement, and the time of displacement. All of these factors are considered in estimating the maximum probable earthquake on any particular fault.'' The report then refers to the previously cited amendments to the text.

BFI presented a report prepared by Purcell, Rhoades & Associates. The report indicated there were ''possible deficiencies with respect to the faulting and seismic potential'' for Kirby Canyon. It pointed out the ''inactive'' classification of the unnamed fault was based upon a 1973 report, supplemented in 1975, which involved the digging of only one trench across the fault and noted the 1975 report was performed in connection with a proposed housing subdivision. The Purcell report recommended a more extensive evaluation of the potential activity of the unnamed fault.

The Purcell report reached the same conclusion as the Santa Clara Valley Health Department, that is, further seismic investigation was recommended.

The City disagreed with this position and set forth a specific response outlining the variables involved in seismic analysis and citing additional factual information. Such a response was adequate and provided sufficient information to the decision-makers to enable them to evaluate the environmental consequences of the proposed project.

 BFI next contends the City failed to make the requisite findings regarding each significant environmental effect of the landfill project. More specifically, BFI maintains the City should have made findings regarding the effect of asbestos dust and the seismic activity along the unnamed fault.[1]

Where an EIR identifies one or more significant environmental effects, the public agency must make certain findings regarding the mitigation measures taken, the appropriate mitigation was within the authority of another entity or specific considerations which made the mitigation measures or project alternatives infeasible. (Pub. Resources Code, § 21081, Guidelines 15091.) "Significant effect on the environment," means "substantial, or potentially substantial, adverse changes in [the environment]." (Pub. Resources Code, § 21100.) The EIR "shall also contain a statement briefly indicating the reasons for determining that various effects of a project are not significant and consequently have not been discussed in detail in the environmental impact report." (Pub. Resources Code, § 21100.)

In the case before us, the EIR refers to the effects of airborne asbestos and the seismic activity of the unnamed fault. These references indicate no significant effect on the environment. There is no statutory requirement that a public agency must include such effects in its findings. Accordingly, we find no error by the City.

 BFI contends substantial evidence does not support the City's decision to approve the EIR. BFI asserts the evidence establishes the EIR

---

[1]BFI argues the standard of review should be whether there was substantial evidence before the City that the effects of asbestos dust and seismic activity of the unnamed fault may be significant. BFI relies primarily on *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514]. *Friends of "B" Street* involved a public agency's threshold decision to prepare an EIR. In contrast, BFI here challenges the adequacy of findings regarding significant environmental effects after a final EIR has been prepared. The factual distinction is an important one. Information concerning environmental effects of a project have not been fully developed at the initial stage and thus, *Friends of "B" Street* held that if there is substantial evidence a "fair argument" could be made that a project will have a significant effect on the environment, an EIR must be prepared. (*Id.*, at p. 1002.) In reaching its holding the court relied in part on specific statutes governing the decision whether an agency must prepare an EIR. Where the final EIR has been prepared, however, the standard of review is whether there was substantial evidence to support the City's approval of the EIR. (Pub. Resources Code. § 21168.)

failed to adequately disclose and analyze the environmental effects of the release of airborne asbestos and the seismic activity along the unnamed fault.

As previously noted, a public agency may choose between differing expert opinions. (See *Carmel Valley View, Ltd.* v. *Board of Supervisors, supra,* 58 Cal.App.3d 817, 822; *County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d 185, 197.) ■■■ An agency may also rely upon the opinion of its staff in reaching decisions, and the opinion of staff has been recognized as constituting substantial evidence. (*Coastal Southwest Dev. Corp.* v. *California Coastal Zone Conservation Com.* (1976) 55 Cal.App.3d 525, 535-536 [127 Cal.Rptr. 775].)

■■■ Regarding the issue of the hazard presented by the release of airborne asbestos, BFI submitted reports by GCI, Dr. Cooper, and Dr. Horn prior to the hearing before the City Council. Edward Fall presented an oral summary of the GCI report at the hearing. Waste Management submitted a report by Mr. Torgerson to refute BFI's claims. However, the City director of planning and the City geologist stated BFI had raised no new issue concerning asbestos. The EIR does refer to the means of mitigating the effects of airborne asbestos. In connection with the hazard presented by the unnamed fault, the EIR states no movement on the unnamed fault was recorded when an earthquake registering 5.9 on the Richter Scale occurred near the proposed site. The EIR also refers to the Sunshine Canyon Landfill in southern California as an example of the high degree of stability of refuse fill slopes during an earthquake. Moreover, in 1972, EMCON Associates conducted a hydrogeologic study and concluded no active fault crossed the project site. There was sufficient evidence to support the City's approval of the EIR and the rezoning of the sanitary landfill site and thus, we find no abuse of discretion.

The judgment is affirmed.

Brauer, J., and Chang, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.