Filed 2/18/22  Lehman v. County of Humboldt CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CRAIG S. LEHMAN,<br><br>        Petitioner and Appellant,<br><br>v.<br><br>COUNTY OF HUMBOLDT et al.,<br><br>        Respondents;<br><br>EMERALD TRIANGLE GROUP,<br>LLC et al.,<br><br>        Real Parties in Interest and<br>        Respondents. | A162986<br><br>(Humboldt County<br>Super. Ct. No. CV2000200) |

In December 2019, respondents County of Humboldt, Humboldt County Board of Supervisors, Humboldt County Planning Commission, Humboldt County Planning Department, and Humboldt County Planning Director John Ford (collectively, county) approved the applications of real parties in interest Emerald Triangle Group, LLC and Joseph Bilandzija (collectively, Emerald) for special permits to use existing buildings in the town of Garberville as cannabis manufacturing and distributing centers.  Petitioner Craig S. Lehman appealed that decision to the county's Board of Supervisors (the Board), arguing that the project was improperly found to be exempt from the

California Environment Quality Act[1] and did not comply with a county ordinance. Before the Board reached a decision on the appeal, Lehman filed a petition for a writ of administrative mandate in the trial court. The trial court denied the petition on the ground that Lehman failed to exhaust his administrative remedies, and this appeal followed. We agree with the trial court, and we affirm.

## BACKGROUND

On December 28, 2016, Emerald submitted applications to the county for two special permits to use three existing buildings located within the town of Garberville for operation of cannabis manufacturing and distribution centers.

On December 5, 2019, the county's Planning Commission (Planning Commission) held a public hearing and received comments on Emerald's applications, including those made by counsel for Lehman, whose business was located adjacent to the proposed project site. At the close of the hearing, the Planning Commission approved the applications. It found the project was exempt from CEQA review pursuant to Guidelines sections 15301 and 15303, which apply where a proposed project involves the continued operation of an existing facility without significant expansion of use or the new construction or conversion of small structures, respectively. The Planning Commission also found that the proposed uses of cannabis manufacturing and distribution facilities were permitted under Humboldt County Code, section 314-55.4, a

---

[1] Public Resources Code, section 21000 et seq. (CEQA). Undesignated statutory references are to the Public Resources Code. References to "Guidelines" are to "the regulations promulgated by the Secretary of the Natural Resources Agency found in title 14 of the California Code of Regulations beginning at section 15000. . . ." (*Schellinger Brothers v. City of Sebastopol* (2009) 179 Cal.App.4th 1245, 1256, fn. 12.)

2

set of regulations there referred to as the Commercial Medical Marijuana Land Use Ordinance (CMMLUO or "Ordinance 1.0").[2]

On December 18, counsel for Lehman submitted a letter to the Board purporting to appeal the decision. Lehman argued that the Planning Commission improperly (1) determined the project was exempt from CEQA review, (2) analyzed the project's compliance under Ordinance 1.0, instead of the more recently enacted Ordinance 2.0, and (3) ignored public comments on potential adverse environmental impacts.

Humboldt County Code section 312-13.5 required that the Board hold the first hearing on Lehman's appeal within 30 working days from the filing of the appeal, or February 3, 2020. A hearing was not held that day and instead was continued to March 17. According to the Board, "[t]he delay in hearing was due to efforts made to coordinate with the [Emerald] and [Lehman] to resolve the issues on appeal." The Board reported that "[s]hortly after the appeal was filed the [Emerald] contacted the Department and asked if removing the proposed ethanol extraction would address the [Lehman's] concerns and asked the Department to reach out to the Appellant. Department contacted the [Lehman] at the phone number listed in the

---

[2] In May 2018, prior to the approval of the applications, the county adopted the Commercial Cannabis Land Use Ordinance (CCLUO or "Ordinance 2.0"), which updated and brought existing cannabis regulations into compliance with California's Medicinal and Adult-Use Cannabis Regulation and Safety Act (Bus. & Prof. Code, § 26000 et seq., as amended by Stats. 2017, ch. 27, § 4). The CCLUO, however, provided that "[a]pplications for commercial cannabis land use permits filed on or before December 31, 2016, shall be governed by the regulations in effect at the time of their submittal, except as follows and is otherwise prescribed herein." (Humboldt County Code, § 55.4.3.1) The Planning Commission reviewed the applications under Ordinance 1.0, since that ordinance was in effect when the applications were submitted.

appeal and left message seeking to discuss the issues raised in the appeal and whether changes such as removing ethanol extraction could be made to address the concerns. No response was ever received. The Department was also contacted by [Emerald] expressing their desire to make other revisions to address issues raised in the appeal."

Meanwhile, on February 5, Lehman filed in the Humboldt County Superior Court a "Petition for Declaratory and Injunctive Relief, or, in the Alternative, Writ of Mandate and Injunctive Relief." Lehman sought a court order mandating the county's "compliance" with CEQA and declaring that the approval of the permits was "void" because the Board had not heard his appeal within the time frame prescribed in Humboldt County Code section 312-13.5. Both the county and Emerald filed answers to the petition.

Due to the shelter-in-place and emergency orders related to the COVID-19 pandemic, the Board continued the hearing on Lehman's appeal to May 19. At the May 19 hearing, the parties appeared by way of video conference. The county's assigned planner and Emerald's counsel and staff presented arguments on the points raised in Lehman's appeal.

For Lehman's part, his counsel stated, "[T]his board does not have the jurisdiction to hear this appeal today." Counsel continued: "If I might explain, because I'm not gonna waive or consent to the jurisdiction today, on February the 5th, 2020, . . . a Complaint was filed on Mr. Lehman's behalf for declaratory relief regarding failure of this Board to comply with CEQA and its own ordinances and failing to hear the appeal at any time between December 18th and the end date of February the 3rd. [¶] . . . [¶] So the jurisdiction to decide all of these issues, including, but not limited to, failure to hear the appeal within the appropriate time, the CEQA issues, as well as the effect of the applicant not being a legal entity is now currently before the

4

court, and the—this board really doesn't have the jurisdiction to hear it at this point. . . . [¶] So with that being the state of the case at this point and with that—everything's pending before the court, I am going to reiterate we don't have the jurisdiction, we are not consenting to this, and I will be signing off."

The Board then opened up the hearing for public comment on the project. Afterwards, the Board addressed Lehman's counsel's assertions on the Board's lack of jurisdiction over the appeal. Members stated they "wanted to hear the legal arguments from the appellant" and were left "puzzled," "frustrat[ed]," or "disturb[ed]." As one member expressed, "It's put us in a really difficult place because . . . we want to be thorough, we want to do our work, we want to ask questions, and they're not here." Another member was "not sure where [Lehman's lack of response] comes from," given that Lehman and Emerald already had several discussions aimed at resolving Lehman's concerns about the project. And another member described Lehman's resort to litigation as "overstepping the whole public process, essentially, and not giving the public the opportunity and time to hear this." In the absence of a "substantive discussion," the Board did not decide the appeal and continued the hearing to June 23.

Two days after the hearing, Lehman filed a motion in the trial court requesting that it stay the proceedings before the Board pending a final adjudication of his petition. The county opposed the motion, arguing Lehman offered no legal authority to support the contention that the Board lost jurisdiction to hear his appeal because it did not hold a timely hearing. The trial court denied the motion due to "a lack of sufficient legal support for the relief requested."

On June 23, the Board held another hearing on Lehman's appeal. Neither Lehman nor his counsel appeared. The Board voted to continue the hearing to July 14.

On July 14, the Board held its third and final hearing on Lehman's appeal. Lehman and his counsel once again did not appear. The Board proceeded with the hearing, received comments from the public, and deliberated on the issues raised in the appeal. At the conclusion of the hearing, the Board denied the appeal and approved the permits on essentially the same grounds relied upon by the Planning Commission in its initial approval. On July 16, the county filed a notice that the project was exempt from CEQA review.

On July 31, Lehman filed a "Motion for Stay of Issued Permits and all Associated Matters or Issuance of Preliminary Injunction Pending Court Review of Petition" and a "Motion for Leave to File [a] First Amended Petition for Declaratory Relief, or in the Alternative, Writ of Mandate and Injunctive Relief" in the trial court. The county and Emerald jointly filed oppositions to both motions. Lehman then filed a "Motion to File a Supplemental/First Amended Petition" to address the Board's recent denial of his appeal. The county and Emerald opposed the motion. On October 22, after conducting a hearing, the trial court denied the motion for a stay but granted Lehman leave to file an amended or supplemental petition.

On October 26, Lehman filed a "Supplemental/First Amended Verified Petition for Declaratory and Injunctive Relief, or in the Alternative, Writ of Mandate and Injunctive Relief," accompanied by a supplement to the administrative record that added documents from the proceedings before the Board. Lehman asserted 15 causes of action, nine of which were for violations of CEQA, three for declaratory relief, two for injunctive relief, and

6

one for "alternative writ of mandate." The declaratory relief claims concerned whether the county in general failed to comply with CEQA in approving the project, whether Ordinance 1.0, rather than Ordinance 2.0, applied to the project, and whether the approval of the applications was "void" because Lehman's appeal was not timely heard.

The county and Emerald filed answers to the petition and asserted as an affirmative defense that Lehman failed to exhaust administrative remedies as required to maintain all of his causes of action.

On February 10, 2021, Lehman filed an opening brief to his petition. The county and Emerald filed a joint opposition to the petition, and Lehman, a reply.

On April 19, the trial court held a hearing on the petition and on June 18, issued a ruling denying the petition in its entirety on the ground that Lehman failed to exhaust his administrative remedies. Finding it had "no jurisdiction" over Lehman's suit, the court declined to address the merits of Lehman's claims. To do so, it added, "would allow a path to open the door to litigation that defeats the exhaustion of administrative remedies requirement."

On June 30, Lehman filed a notice of appeal of the June 18 ruling. Notice of entry of the judgment was served on July 12.[3]

---

[3] The notice of appeal was premature because it was filed before the judgment was entered. However, pursuant to California Rules of Court, rule 8.104(d)(2), we "may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."

7

## DISCUSSION

### Introduction

Lehman argues the trial court erred by: (1) "finding that in order to exhaust administrative remedies pursuant to CEQA, a litigant cannot rely upon written comments, but must orally present them"; (2) "finding that there were no mandatory time frames in [the county's] own ordinance for which to hear an appeal"; and (3) "not addressing [Lehman's] requested declaratory relief." (Capitalization omitted.)

Preliminarily, we note Lehman's first argument challenges the court's application of the exhaustion of administrative remedies doctrine only with respect to his CEQA-related claims. But it does not appear to encompass his non-CEQA claims, including the claim for declaratory relief concerning whether the county incorrectly applied Ordinance 1.0. While the court did not distinguish between Lehman's CEQA and non-CEQA claims in its ruling, its denial of the petition in its entirety indicates it found that Lehman failed to exhaust administrative remedies as to all of his causes of action. Lehman's failure to address whether the exhaustion doctrine bars his non-CEQA claims and requires us to affirm the court's finding that it does. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [a trial court judgment is "presumed to be correct" and an appellant has the burden to demonstrate the court erred]; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 558 [appellant's "failure to address" court's "ruling in its opening brief compels the conclusion the trial court's ruling on that point must be affirmed"].)

As to Lehman's arguments that are before us, we reject the first and second described above, leading us to conclude that he failed to exhaust his administrative remedies before seeking judicial review of his court action. It

8

follows that the court properly declined to reach the merits of Lehman's declaratory relief claims and thus his third argument fails.

We begin with the law on the exhaustion of administrative remedies.

**The Law**

" 'In brief, the rule [of the exhaustion of administrative remedies] is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' [Citation.] The rule is a jurisdictional prerequisite in the sense that it 'is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts.' [Citations.]" (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 874 (*Citizens for Open Government*), quoting *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.)

One rationale for the exhaustion doctrine is administrative autonomy. (*California Water Impact Network v. Newhall County Water District* (2008) 161 Cal.App.4th 1464, 1489 (*California Water Impact*).) "[T]he principal purpose of the doctrine . . . is to afford administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review. [Citation.] It requires that the parties await the *final* outcome of administrative proceedings before seeking judicial review." (*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 748 (*San Bernardino Valley*); see *California Water Impact, supra,* 161 Cal.App.4th at p. 1489 ["courts should not interfere with an agency determination until the agency has reached a final decision"]; see also *California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 629 ["The purpose of the exhaustion doctrine is to

ensure the administrative agency 'will have had an opportunity to act and render the litigation unnecessary' "].)  To that end, "[t]he doctrine of exhaustion of administrative remedies is a closely related concept to finality." (*California Water Impact*, at p. 1489.)

Another rationale for the exhaustion of remedies doctrine is judicial efficiency.  The doctrine aims " ' "to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief."  [Citation.]  Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency."  [Citation.]  It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review. [Citation.]' " (*Sierra Club v. San Joaquin Local Agency Formation Commission* (1999) 21 Cal.4th 489, 501 (*Sierra Club*).)

Section 21177 addresses the exhaustion of remedies in CEQA cases.  It provides that no action or proceeding may be brought alleging non-compliance with CEQA unless (1) the alleged grounds for noncompliance "were presented to the public agency orally or in writing by any person during the public comment period provided by this division or before the close of the public hearing on the project before the issuance of the notice of determination" and (2) the person bringing the action "objected to the approval of the project orally or in writing during the public comment period provided by this division or before the close of the public hearing on the project before the filing of notice of determination."  (§ 21177, subds. (a), (b).)

10

However, section 21177 "does not prescribe a specific appeal process following a determination a project is exempt from CEQA." (*McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 76–77 (*McCann*).) Instead, CEQA regulations and Guidelines contemplate that a "local lead agency may establish procedures governing such appeals" to the "agency's elected decision-making body." (§ 21151, subd. (c); Guidelines, § 15061, subd. (e).)

"Several cases recognize that when an agency elects to adopt an administrative appeal process, the common law rule requiring the exhaustion of administrative remedies applies to CEQA litigation and the scope of the remedy is 'determined by the procedures applicable to the public agency in question.'" (*McCann, supra,* 70 Cal.App.5th at p. 77, citing *Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 592, fn. 6 (*Tahoe Vista*); see also *Clews Land & Livestock, LLC v. City of San Diego* (2017) 19 Cal.App.5th 161, 184, fn. 3 [stating requirements of section 21177 are "separate from, and in addition to" the operation of the exhaustion doctrine where there are "available administrative procedures to challenge" the agency's decision].) Thus, "whether the exhaustion doctrine applies depends on the relevant procedures available in a specific jurisdiction." (*California Clean Energy Committee v. City of San Jose* (2013) 220 Cal.App.4th 1325, 1345.) "Where an appeal process is available and a party fails to exhaust its administrative remedies, it may not bring a judicial action challenging the environmental determination." (*McCann, supra,* 70 Cal.App.5th at p. 77.)

The petitioner bears the burden of demonstrating exhaustion of administrative remedies. (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1136.) And we employ a de novo standard of review when determining whether the exhaustion of administrative remedies doctrine applies. (*Ibid.*)

11

**The Trial Court Correctly Determined Lehman Failed to Exhaust His Administrative Remedies**

As discussed, consideration of whether exhaustion of administrative remedies has occurred depends upon the procedures applicable to the public agency in question. (See *Tahoe Vista, supra,* 81 Cal.App.4th at p. 591.) Here, Humboldt County Code section 312-13 provided an appeals process for a decision made by the Planning Commission on an application for a user permit, which this project required. Specifically, Humboldt County Code section 312-13.1 states that "any person . . . aggrieved by an action taken by the Hearing Officer on any completed application, may appeal such action to the Board of Supervisors by filing a notice of appeal with the Department within ten (10) working days of said action."

Humboldt County Code section 312-13.5 further provides: "The first hearing before the Planning Commission or Board of Supervisors to consider the appeal shall begin within thirty (30) working days after the date of filing the appeal." "After the appeal hearing before the Board of Supervisors, the Board may sustain the action which is being appealed, grant or modify the application subject to specified conditions, or it may deny the application." (Humboldt County Code, § 312-13.7.) Moreover, the Board "reserves the right to hear and decide all appealable matters, decisions and actions taken under the authority of the Zoning Code of the County of Humboldt." (*Id.*, § 312-13.10.)

Here, the trial court found that Lehman failed to exhaust the remedy available to him through the above appeals process by declining to participate in it beyond the filing of an appeal, making these specific observations:

"[I]t was premature for [Lehman] to file suit in this Court related to the subject of the appeal to the Board of Supervisors. The lawsuit was filed

12

before the Board had considered the appeal. . . . [¶] "As to the appeal itself, counsel for [Lehman] sent a letter with the notice of appeal, which laid out [Lehman's] position and objections to the proposed project. . . . For an appeal to be meaningful, the Department must have the ability to address concerns raised in the appeal. Beyond submitting the notice and accompanying letter, [Lehman] chose to participate no further in his own appeal. Instead, [Lehman] took the approach that the Board somehow lost jurisdiction. This Court finds that interpretation of the law to be erroneous.

"The first actual hearing took place on May 19, 2020. The county and the applicant, [Emerald], made presentations to the Board of Supervisors. [Lehman] and counsel were present via the video hearing, but did not participate or offer any evidence or argument to the Board. That hearing was continued and reconvened on June 23, 2020. Again, [Lehman] chose not to participate or offer any information or evidence to the Board. The Board then continued the hearing once again to July 14, 2020, which provided Petitioner yet another opportunity to prove evidence to counter that which was provided to the Board by the county and [Emerald].

"[Lehman] declined to participate. The Board went to extraordinary lengths to attempt to engage [Lehman] in the process to no avail. While the initial letter attached to the notice of appeal . . . does outline the objections made and references opposition some community members had, this is not the equivalent of exhausting administrative remedies. The county presentation addressed the issues that were brought up in the letter, but there was no one on the other side to provide evidence counter to that presentation. The Board, left only with information and evidence put forth by the county and [Emerald], denied the appeal and approved the project."

The trial court was spot on.

As explained, the exhaustion of administrative remedies doctrine requires parties to "await the final outcome of administrative proceedings before seeking judicial review." (*San Bernardino Valley*, *supra*, 155 Cal.App.3d at p. 748; accord, *California Water Impact, supra,* 161 Cal.App.4th at p. 1489.) Indeed, Lehman concedes this point in his reply brief where he quotes *Aircraft & Diesel Equipment Corp. v. Hirsch* (1947) 331 U.S. 752, 767: "The doctrine, wherever applicable, does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion and, correlatively, of awaiting their final outcome before seeking judicial intervention." And Lehman agrees that he did not wait for a final decision by the Board before he sought judicial intervention. On top of that, he filed his original petition before the Board even began to *consider* his appeal.

Consequently, Lehman's initiation of this action amounted to a "premature interruption of administrative processes." (*California Water Impact*, *supra*, 161 Cal.App.4th at p. 1489.) The Board lacked a meaningful "opportunity to receive and respond to articulated factual issues and legal theories *before* its actions [were] subjected to judicial review.'" (*Citizens for Open Government*, *supra*, 144 Cal.App.4th at p. 874.) As the court suggested, the administrative record had not been developed, the claims had not been "sifted," the evidence had not been "unearthed," and the agency had not "already applied its expertise and made its decision as to whether relief [was] appropriate." (*Sierra Club*, *supra*, 21 Cal.4th at p. 501.) In sum, none of the purposes of the exhaustion doctrine has been served by Lehman's actions—more accurately, lack of action—at the administrative level. And the trial court correctly found that Lehman failed to exhaust his administrative remedies.

Lehman asserts several counter-arguments, which as will be seen are either forfeited because he does not develop them in any meaningful way or lack merit, or both.

First, Lehman argues that the trial court incorrectly found that in order to exhaust administrative remedies, Lehman "had to *orally* present his grievance to the Board and could not exclusively rely on his written claims."[4] This argument misses the mark. As the county and Emerald note, the court's ruling "does not make, or depend on, such a distinction [between oral and written comments]. . . . Rather, the court concluded that, although [Lehman] submitted his initial letter with his appeal of the Planning Commission's decision, [he] did not participate *at all* (whether orally or in writing) beyond that stage in the administrative process."

Second, Lehman reasserts his argument that the Board lost jurisdiction when it failed to hold the first hearing on his appeal within the 30-day deadline prescribed in Humboldt County Code section 312-13.5—an argument that in essence asserts he was excused from exhausting

---

[4] At oral argument, Lehman's counsel repeatedly cited to *Browning-Ferris Industries v. City Council* (1986) 181 Cal.App.3d 852 (*Browning*) and *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885 (*Porterville*) as controlling on the exhaustion issue. Curiously, however, Lehman's opening brief does not mention either case. Instead, he raises them for the first time in his reply brief. In any event, neither case assists Lehman. Similar to the public agency in *Porterville*, the Board here, for the reasons stated above, did not have "the opportunity to receive and respond to articulated factual issues and legal theories before its actions [were] subjected to judicial review." (*Porterville*, *supra*, 157 Cal.App.4h at p. 910.) And *Browning*, *supra*, 181 Cal.App.3d at p. 860 is distinguishable because it did not address the exhaustion doctrine in the context of an appeals process made available by an agency.

administrative remedies.[5]  One exception to the exhaustion doctrine exists "where it appears the administrative board is without jurisdiction and thus the remedy is unavailable or where the remedy is inadequate."  (*California Water Impact*, *supra*, 161 Cal.App.4th at p. 1490.)

In support of his assertion that the Board lacked jurisdiction to decide his appeal, Lehman provides a string of citations to several statutes (Code of Civil Procedure sections 525, 1060, and 1094.5 and Public Resources Code section 21100 et seq.) and the California Constitution (article VI, § 10).  But since Lehman does not bother to explain how these authorities support his claim, we have no obligation to try to figure it out—and may disregard it. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119 [Lehman's failure "to articulate any pertinent or intelligible legal argument in an opening brief may, in the discretion of the court, be deemed an abandonment"]; see *In re S.C.* (2006) 138 Cal.App.4th 396, 411–412 ["string citations [where] appellant's counsel makes no effort to explain how the authorities support her claim of error" are "unhelpful," and court's role is not "to carry appellate counsel's burden"].)

Even if we were to consider the point, the cited authorities appear to have no relevance to the issue regarding the loss of jurisdiction by an administrative agency.  (See, e.g., Code Civ. Proc., § 1060 [right of action for declaratory relief]; *id.*, § 525 [definition of injunctive relief]; *id.*, § 1094.5 [availability of review by writ for administrative mandate]; § 21100 [required contents of environmental impact reports on proposed projects]; Cal. Const.,

---

[5] Lehman asserts that the county and Emerald waived any challenge to this argument by not raising it below.  We disagree, as the record reveals numerous instances in which the county and Emerald specifically argued that the Board did not lose jurisdiction when it did not conduct the first hearing on the appeal within the 30-day time frame.

16

art. VI, § 10 [original jurisdiction vested in courts for proceedings of habeas corpus and extraordinary relief].)

Equally unhelpful is Lehman's string citation to cases where he argues that "while there are no cases directly on point, a court must decide the consequences of failure to act within a mandatory time frame by analogy to other matters." Again, Lehman fails to explain how the cited authorities support his position, and we will not develop that point for him. Indeed, several of the cited cases include *Steen v. City of Los Angeles* (1948) 31 Cal.2d 542 (*Steen*) and cases that cite *Steen,* such as *McDonald's Systems of California, Inc. v. Board of Permit Appeals* (1975) 44 Cal.App.3d 525 (*McDonald's*), both of which the trial court referred to in its ruling to reject Lehman's claim.

In *Steen*, *supra*, 31 Cal.2d 542, our Supreme Court addressed the contention of plaintiff a civil service employee that proceedings related to his discharge should be dismissed because the board of civil service commissioners failed to hold a hearing within 15 days of the charges or a reasonable time. The court stated the general rule: "It is necessary that there exist a very clear indication that the jurisdiction of a board has been exhausted after the expiration of a certain period of time, before a court will find such loss of power." (*Id.* at p. 546.) Then, in rejecting the plaintiff's argument that the board lost jurisdiction, the court explained: "The board is an agency with continuing existence. It does not lose jurisdiction over a discharge proceeding merely by lapse of time. . . . [T]he determination of the issues should first be made by the administrative agency. It is given jurisdiction for that purpose, and interference with that jurisdiction should not be permitted until it has been pursued to the point of exhaustion. Therefore, insofar as the termination of the jurisdiction of the board is

17

concerned, the conclusion must be that it does not lose its jurisdiction to proceed in accordance with the provisions of the charter by delay in the conduct of a hearing." (*Id.* at pp. 545–546; accord, *McDonald's*, *supra*, 44 Cal.App.3d at p. 544, fn. 15.)

In applying the principle in *Steen*—that requirements relating to the time within which an administrative agency's act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed—"California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' [Citations.]" (*Edwards v. Steele* (1979) 25 Cal.3d 406, 410 (*Edwards*).)

Here, under either test outlined in *Edwards* when applied to the ordinance at issue, the result is the same—the 30-day time limit was intended to have only a directory effect. (*Edwards*, *supra*, 25 Cal.App.2d at pp. 409–410 [municipal code specifying time to conduct hearing on appeal by administrative board was held to be directory]; *Anderson v. Pittenger* (1961) 197 Cal.App.2d 188, 194 (*Anderson*) [same].)

The probable intent underlying the Humboldt County Code was to assure to the *aggrieved party* a reasonably timely hearing of his or her administrative appeal. To hold that the provision is mandatory and jurisdictional would seemingly defeat that purpose by depriving the aggrieved party of his or her appeal through no fault of that party. Moreover, as the county and Emerald note, no "consequence" or "penalty" for

18

noncompliance with the time limitation is contained in Humboldt County Code section 312-13.5. It is also noteworthy that the court found the Board's delay in holding a hearing did not prejudice Lehman, a finding he does not meaningfully address on appeal.

Lehman argues *Steen* is distinguishable because it "deal[s] with situations where there is no specific time frame set forth" and thus its "holding is limited to situations where there are *not* specific time frames set forth to comply with."[6] In the first place, this is another conclusory assertion that Lehman fails to develop in any meaningful way. It is also unavailing. Although the city charter provision in *Steen* did not prescribe a specific time limit within which the board must hold a hearing, the court still imposed a time limit—that is, that the hearing must be held within a reasonable time. (*Steen, supra*, 31 Cal.2d at pp. 545–546.) Then, in rejecting the plaintiff's argument that the board lost jurisdiction for delaying to hold a hearing, the court relied on cases that did address specific statutory time frames governing an agency's actions, statutes that were construed to be directory

---

[6] In his reply brief, Lehman also attempts to distinguish *McDonald's* and *Anderson*, both of which cite *Steen*. With respect to the arguments related to *McDonald's*, Lehman does not explain why he did not raise them in his opening brief, when he could and should have, given that the case was cited in the trial court's ruling. In any event, the perceived differences from *McDonald's* and *Anderson* Lehman notes pertain to legal issues that are unique to those cases and not relevant here. For example, he notes that this case, unlike in *McDonald's*, was not "based upon a conflict between a city charter language or any ordinance." But the existence of such a conflict was relevant to the validity of an ordinance, an issue we are not concerned with here. (See *McDonald's, supra*, 44 Cal.App.3d at pp. 538–539.) As for *Anderson*, Lehman points out certain procedural facts in the administrative hearings in that case, such as a tie vote by the council, which he argues were absent in this case. But, again, those facts were relevant to a question that was raised in that case and not at issue here. (See *Anderson, supra*, 197 Cal.App.2d at pp. 194–195.)

and not jurisdictional. (*Ibid.*, citing *Buswell v. Board of Supervisors of Alameda County* (1897) 116 Cal. 351, 354 (*Buswell*) ["It is a general rule . . . that the provisions as to the time upon which, or within which, acts are to be done by a public officer regarding the rights and duties of others are directory, unless the nature of the act or language of the legislature makes it clear that the time fixed is by way of limitation"]; *Whiting Finance Co. v. Hopkins* (1926) 199 Cal. 428, 436 [applying *Buswell*]; *Universal Consolidated Oil Co. v. Byram* (1944) 25 Cal.2d 353, 363 [same].) We thus fail to see how "*Steen*'s holding is limited to situations where there are *not* specific time frames set forth to comply with."

Additionally, Lehman states in passing that the Board's delay in conducting the first hearing "resulted in the denial of [his] due process rights." This assertion too is devoid of any citation to legal authority or reasoned argument.

Finally, Lehman asserts it would have been futile to participate in the hearings before the Board because he would have "repeat[ed] the same briefed law and facts which had been consistently rejected by Staff at the Planning Commission Staff Report, and the Staff Reports to the May, June and July Board Hearings regarding the misuse of the categorical exemptions"—yet again, another conclusory argument we may disregard. In any event, it lacks merit. While an exception to the exhaustion of administrative remedies exists where " 'it is clear that exhaustion would be futile.' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Board* (2005) 35 Cal.4th 1072, 1080.) " 'The futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case." ' " (*Id.* at pp. 1080–1081.) Here, the record does not

20

"positively" indicate how the Board would have decided Lehman's appeal had he fully availed himself of the appeals process.[7]

For all of these reasons, the trial court correctly found that Lehman failed to exhaust his administrative remedies before seeking judicial review of all of his claims. Because Lehman did not meet a jurisdictional prerequisite to bringing this action, the court properly declined to address the merits of his declaratory relief claims, or any of his claims, and denied the petition.[8]

---

[7] Moreover, as the county and Emerald point out, Lehman's assertion that he would have simply repeated the same legal and factual arguments had he participated in the appeals process rings hollow when considering that he raised new assertions in the trial court that were outside the scope of his appeal before the Board. For instance, Lehman's petition attacked the credentials of Emerald's representative and the comments and testimony that the representative provided at the Board's meetings on Lehman's appeal—arguments that he did not make, but could have made, at those meetings had he participated.

[8] Even if we were to reach the issue, we would conclude that Lehman's arguments raised in connection with it, as with many others raised throughout his brief, either are forfeited or lack merit. In the last three pages of his opening brief, Lehman argues he was entitled to a declaration that (1) the county erroneously applied Ordinance 1.0; (2) the county improperly exempted the project from CEQA review; and (3) the approvals were void because of the failure to hold a timely hearing. As to the first claim, Lehman cites the entirety of both Ordinance 1.0 and Ordinance 2.0 without identifying any provisions in either and demonstrating specifically how one, and not the other, was applicable. This claim is wholly conclusory and thus forfeited. As is the second claim, which is even more skeletal since it is accompanied by no argument at all. The fact that Lehman expounds on these points in his reply brief does not cure his failure to develop them in his opening brief. (See *Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6.) Finally, the third claim fails on the merits, as it is premised on the argument that the Board lost jurisdiction to decide Lehman's appeal, an argument we rejected.

## DISPOSITION

The judgment is affirmed. The county and Emerald shall recover their costs on appeal.

_____
Richman, Acting P. J.

We concur:


_____
Kline, J.*


_____
Stewart, J.


*Lehman v. County of Humboldt* (A162986)

     *Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23